UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Nicholas DeJesus, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>  v.<br><br>Creditsafe USA Inc.,<br><br>         Defendant. | Case No. 5:14-cv-04229-JLS |

**PLAINTIFFS' UNOPPOSED MOTION TO APPROVE
COLLECTIVE ACTION SETTLEMENT AND ATTORNEY FEES
<u>WITH MEMORANDUM IN SUPPORT</u>**

  Named Plaintiff, Nicholas DeJesus ("Plaintiff"), respectfully moves for approval of the Settlement reached in this Fair Labor Standards Act ("FLSA") collective action on behalf of all current and former employees of Creditsafe USA Inc. ("Creditsafe") in Pennsylvania, who were allegedly required to work overtime hours ("OT"), without pay, between January 1, 2012 and August 13, 2014. Creditsafe does not oppose this Motion. To effectuate a binding release, FLSA settlements generally require judicial approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982); *accord Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008) (FLSA rights may be released by stipulated judgment). A copy of the Parties' confidential Settlement Agreement and Release of Claims ("Settlement Agreement") is attached hereto as Exhibit 1. Plaintiff respectfully requests that this Honorable Court enter an Order granting this motion and approving the Parties' Settlement.

**MEMORANDUM IN SUPPORT**

Plaintiff and Defendant have reached a settlement of this FLSA collective action that provides participating class members monetary relief that approximates full value plus liquidated damages for their alleged unpaid overtime hours, between January 1, 2012 and August 13, 2014, for which they were not paid. This outcome is a model of efficient resolution, achieved early in the case by experienced counsel for both sides, with minimal burden on the Court. The Settlement should be approved.

Settlement was reached after the Parties' investigation of the facts, production by Creditsafe of case-critical payroll and time records, written and verbal correspondence with Plaintiff and other potential class members by Plaintiffs' counsel, and a settlement conference with the Court to bring about a resolution. In order to settle this matter, Creditsafe has agreed to pay a "Global Settlement Amount" of $92,500.00, inclusive of attorneys' fees and costs, to resolve all claims of the Plaintiff Class for unpaid wages, related to unpaid overtime hours, that were alleged in the Lawsuit. The Global Settlement Amount shall be allocated as follows: (1) $59,167.00 shall be allocated to pay the claims of the FLSA Settlement Class (the "FLSA Settlement Fund"), and (2) $33,333.00, or such other amount approved by the Court, shall be allocated to pay the attorneys' fees and costs.

Based on the time and payroll data exchanged by the parties, and their independent investigation of the relevant facts, Plaintiffs' counsel believes the $59,167.00 FLSA Settlement Fund approximates the value of the putative Class Members' total claims for unpaid overtime hours worked during the applicable time period, plus liquidated damages in the amount of 81% of a possible 100% allowable under the FLSA, free and clear of attorneys' fees or expenses.

## Facts and Procedural History

On July 14, 2014, Plaintiff filed a class and collective action Complaint against Creditsafe on behalf of himself and others similarly situated alleging that Creditsafe violated the FLSA, the Pennsylvania Wage Payment and Collection Law, 43 P.S. 260.1 *et seq.* and the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101 *et seq.*, by failing to pay Plaintiff and similarly situated employees for overtime hours worked. (Doc. 1). Creditsafe filed an Answer denying the material allegations of Plaintiff's Complaint on September 15, 2014. (Doc. 8).

On January 8, 2015, the Parties attended a Settlement Conference held before the Honorable Jeffrey L. Schmehl. The attorneys who attended the mediation are experienced wage and hour litigators and vigorously represented their clients' respective interests.

Before the Settlement Conference, the Parties embarked on an investigation and exchange of information to ensure an informed and constructive discussion. The Parties exchanged critical class, payroll, and compensation data, and Plaintiffs' counsel consulted Plaintiff as well as the other Opt-In Plaintiff. During the Settlement Conference, the Parties evaluated the payroll data, as well as defenses which Creditsafe intended to raise to Plaintiff's claims. Negotiations were robust as both sides zealously advocated their interests. As a result of discussions with each other and with Judge Schmehl, the Parties were able to reach a mutually acceptable settlement.

## Settlement Terms

The Parties have executed a Settlement Agreement that allows eligible members to participate in a settlement of the wage and hour claims asserted in this action. The Class is defined as: "All current and former non-exempt workers employed by Creditsafe to handle telesales duties at Creditsafe's Pennsylvania facilities between January 1, 2012 and August 13,

2014." To the best of the knowledge and belief of Plaintiff and Creditsafe, there are one hundred ninety-four (194) people in the Class.

The Settlement Agreement and Release of Claims provides for a "Global Settlement Amount" of $92,500.00, inclusive of attorneys' fees and costs, to resolve all claims of the Plaintiff Class for unpaid wages alleged in the lawsuit. The Global Settlement Amount will be allocated as follows: (1) $59,167.00 will be allocated to the FLSA Settlement Fund, and (2) $33,333.00, or such other amount approved by the Court, shall be allocated to pay the attorneys' fees and costs.

The amount of settlement distributions to the members of the FLSA Settlement Class who opt in to the class shall be determined by formula. First, a minimum distribution of $50.00 (fifty dollars and no cents) will be awarded to each member of the FLSA class. Following the minimum distribution, the remaining settlement fund will be allocated proportionately amongst the Class Members based upon the Lifetime OT Owed as identified by Creditsafe's internal records. One-half of all settlement distributions will be deemed wages and reported to each Class Member on a W-2 Form. The other one-half of all settlement distributions will be deemed interest and liquidated damages and reported to each Class Member on an IRS Form 1099 in Box 3. Payments that are issued from the FLSA Settlement Fund shall reflect all applicable withholdings and previously authorized deductions.

Based on the time and payroll data exchanged by the Parties, and their independent investigation of the relevant facts, Plaintiffs' counsel believes the $59,167.00 FLSA Settlement Fund approximates the value of the putative Class Members' unpaid overtime wages, plus liquidated damages, during the applicable time period, free and clear of attorneys' fees or expenses. Plaintiffs' counsel engaged in numerous discussions with Plaintiff, the other Opt-In

Plaintiff, and counsel for Creditsafe to determine the scope of Plaintiff's claims and the defenses which would be asserted. Based upon these discussions, Plaintiffs' counsel determined that questions existed with respect to whether some of all of the claimed overtime hours were actually compensable. Furthermore, arguments were raised by Creditsafe that Creditsafe acted in good faith and would likely be able to defend against an assessment of liquidated damages. Using the payroll and scheduling data provided by Creditsafe by way of an independent third-party vendor, Plaintiffs' counsel estimates that the FLSA Settlement Fund represents payment for all uncompensated overtime hours, plus liquidated damages of approximately 81% out of the 100% damages available under the FLSA. The FLSA Settlement Fund, therefore, provides approximately full compensation and liquidated damages to participating Class Members, exclusive of attorneys' fees and costs, and provides a minimum compensation of $50.00 to participating Class Members who have no recorded unpaid overtime hours.

Importantly, no putative Class Members must participate, nor must any putative Class Members submit anything to opt out of the Settlement in order to preserve any claim. Instead, only putative class members who affirmatively participate will release their alleged claim. Any unclaimed portion of the FLSA Settlement Fund will revert back to Creditsafe.

The Release provision is narrowly tailored to the wage claims asserted in the case, and applies only to those members of the Plaintiff Class who choose to accept the Settlement benefit. It provides, *in toto*:

> Nicholas DeJesus and each individual who submits a Consent Form fully releases Creditsafe from any and all wage and hour claims, under any state or federal law, including any statute (and expressly including but not limited to the Fair Labor Standards Act), regulation or common law, that was raised or could have been raised in the Lawsuit with respect to unpaid overtime hours. The release is binding on Nicholas DeJesus and each individual who submits a Consent Form, and on their respective heirs, estates, executors, administrators, assigns, transferees, and representatives.

5

No Class Member, including Nicholas DeJesus, is granting a general release of claims.

The proposed notice to the putative Class Members (Exhibit 2 attached hereto) fully and clearly informs them of the material terms of the Settlement, their rights to participate or not, the possible limitations on their rights should they not participate, the precise scope of the release, and the procedure to implement whatever decision each individual makes regarding the Settlement. The Payment Check itself will state, "By endorsing this check, I hereby release all federal and state wage and hour claims asserted in the lawsuit titled *Nicholas DeJesus, individually and on behalf of all others similarly situated* v. *Creditsafe USA Inc.,* Case No. 5:14-cv-04229-JLS in the United States District Court for the Eastern District of Pennsylvania, including known and unknown claims."

In addition to compensating Plaintiff for his alleged unpaid overtime wages, the Settlement provides for a modest $3,500.00 service award to Plaintiff DeJesus and a $1,000.00 service award to Opt-In Plaintiff Danielle Fredericks, who were instrumental in pursuing this case, and diligently worked with Plaintiffs' counsel to investigate the case and further the litigation, all for the benefit of those employees who will recover under this Settlement.

**Argument**

**I.       The Standard and the One-Step Procedure for FLSA Opt-In Settlement Approval**

Because the Settlement has no binding effect on absent class members unless they affirmatively accept the benefits of the Settlement, it is governed by FLSA procedures rather than Rule 23, which is binding on absent class members unless they affirmatively opt *out* of the class. *Compare, e.g., Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("a judgment in a properly entertained class action is binding on class members in any subsequent action") *and Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining purpose of

...

Rule 23 notice is to advise class members they will be *bound* by judgment unless they request exclusion) *with Greenwald v. Phillips Home Furnishings Inc.*, 2009 WL 259744 at *4 (E.D. Mo., Feb. 3, 2009) ("A collective action under [the FLSA, 29 U.S.C.] § 216(b) differs from class actions brought under Rule 23 . . . . A primary distinction is that under FLSA a similarly situated employee must 'opt in' to the collective action to be bound by it.").

In scrutinizing a settlement, "the primary focus of the court's inquiry in determining whether to approve the settlement of an FLSA collective action is not, as it would be for a Rule 23 class action, on due process concerns, but rather on ensuring that an employer does not take advantage of its employees in settling their claims for wages." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008) (internal citations omitted). Accordingly, courts grant final approval to FLSA opt-in settlements in a single step, rather than the Rule 23 procedure that utilizes preliminary approval, notice to the class members who will be bound unless they opt out, and final approval after an "opt out" period. *E.g., Hill v. World Wide Tech. Holding Co., Inc.*, 4:11CV02108 AGF, 2012 WL 5285927 (E.D. Mo. Oct. 25, 2012) (granting final approval of FLSA settlement as to both the named plaintiff and all eligible FLSA collective class members who elect to opt-in to the settlement).

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Simmons v. Enterprise Holdings, Inc.*, 2012 WL 2885919 at *1 (E.D. Mo. July 13, 2012) (citing *Lynn's Food Stores,* 679 F.2d at 1353). "Accordingly, as long as the Court is satisfied that a settlement reached in adversarial proceedings represents a fair and equitable compromise of a bona fide wage and hour dispute, the settlement may be approved." *Id.* Court review of an FLSA settlement is two-pronged.

First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores,* 679 F.2d at 1353-1354. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Id.* at 1354. If the proposed settlement reflects a reasonable compromise of contested issues, the Court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

"While the Third Circuit has not directly addressed the factors to be considered in deciding motions for approval of FLSA settlements, district courts have typically looked to the considerations set forth in *Lynn's Food*." *Brumley v. Camin Cargo Control, Inc.*, CIV.A. 08-1798 JLL, 2012 WL 1019337 (D.N.J. Mar. 26, 2012). This Court should readily conclude the Parties' Settlement here is a reasonable resolution of a *bona fide* dispute in contested litigation.

## II. The Putative Opt-In Class Members are Similarly Situated

As a threshold matter, the Court may readily conclude that the employees eligible to participate in the settlement are "similarly situated" within the requirements of 29 U.S.C. § 216(b) of the FLSA, which is the standard for maintenance of an FLSA collective action. As defined by the class, all included individuals are current and former employees of Creditsafe USA Inc. who worked in Pennsylvania. Furthermore, all included individuals were non-exempt workers handling telesales duties and all were allegedly subject to working overtime hours, without pay, between January 1, 2012 and August 13, 2014. Because of these key similarities, the Court may readily conclude the employees are "similarly situated" for purposes of effectuating this Settlement.

### III. The Proposed Settlement Is the Product of Contested Litigation

The proposed Settlement is the product of contested litigation, and this conclusion is not altered by the Parties' ability to compromise this case early in the proceedings. In his Complaint, Plaintiff presented detailed allegations regarding Defendant's policies and practices of requiring employees to work overtime hours without compensation. In its Answer, Creditsafe denied Plaintiff's material factual allegations and asserted numerous defenses that it argued would defeat Plaintiff's and putative Class Members' claims in whole or in part. Through cooperative, informal exchange of time and payroll data and other relevant job-related information, the Parties extensively investigated Plaintiff's claims. In addition to their factual investigation, the Parties also analyzed the various legal issues implicated in this case, including the standards for assessing and defending claims for liquidated damages under the FLSA. The settlement of this lawsuit was achieved only after the exchange of key information on disputed fact issues and the vetting of the Parties' positions through arms-length negotiation in the Settlement Conference.

### IV. The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a *bona fide* dispute between the Parties under the FLSA. The second issue involves a review of the fairness and reasonableness of the proposed Settlement. Both are easily satisfied.

#### A. A *Bona Fide* Dispute Existed Between the Parties

Plaintiff alleges Creditsafe violated the FLSA and Pennsylvania wage law because it required employees to work overtime hours without compensation. Creditsafe denies Plaintiff's

allegations, contends that its policies and practices comply with all applicable laws, and asserts numerous affirmative and other defenses.

If Plaintiff's allegations ultimately proved correct, Creditsafe would be faced with the prospect of a substantial monetary verdict exceeding the amount of the Settlement, including additional damages for willfulness and statutory liquidated damages, as well as an obligation to pay legal fees and costs incurred by Plaintiff to prosecute the case through trial instead of the comparatively small fees incurred to obtain this early resolution. If Creditsafe prevailed, then Plaintiff would obtain no recovery of any kind. The Parties' positions were staked out in the Parties' pleadings and at the Settlement Conference, and the Court should readily conclude a *bona fide* dispute between the parties existed.

### B. The Proposed Settlement Is Fair and Reasonable

This Settlement was the product of arm's-length negotiations by experienced counsel and approximates the value of the putative Class Members' total claims for unpaid overtime hours worked, plus liquidated damages, during the applicable time period, free and clear of attorneys fees or expenses, as well as eliminating inherent risks both sides would bear if this complex litigation continued to resolution by a jury. As a compromise, and to provide Creditsafe with the certainty of a ceiling on liability, the Global Settlement Amount is capped at $92,500.00. Plaintiffs' counsel supports this compromise, in view of the disparity of factual testimony anticipated amongst both plaintiff and defense witnesses, and because the time upon which the FLSA Settlement Fund is based represents the uncompensated overtime hours represented by data extracted by an independent third-part vendor from Creditsafe's computer systems in addition to payment of over eighty percent of full liquidated damages. In sum, these are patently reasonable compromises in light of the risks and costs associated with prosecuting the case to a

jury trial. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (the adversarial nature of a litigated FLSA case indicates fairness). Several specific factors confirm the Settlement's fairness and reasonableness:

### 1. Public Policy Favors Settlements

Public policy favors settlements. This is particularly true in complex cases such as this, where substantial resources can be conserved by avoiding the time, cost, and rigor of protracted litigation. *See Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor"). The Parties' early settlement is a model of adversarial positions coupled with cooperative exchange of critical information to enable the Parties and their counsel to evaluate the claims and defenses without protracted expense and burden on the Court.

### 2. Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief

The Parties disagree about the merits of Plaintiff's and the Class Members' claims and the viability of Creditsafe's defenses. If litigation continues, Plaintiff and the putative class would face many obstacles, including (i) the risk that the case would not be certified; (ii) challenges to proving damages; (iii) risk of decertification; and (v) the inherent risks of a jury trial. The proposed Settlement brings immediate monetary value to each of the class members who elect to participate. Although the recovery at trial could have been greater than sums received under the Settlement Agreement, it is also possible the recovery would have been less, or nothing at all. For instance, Creditsafe contended that any overtime which was unpaid was *de*

11

*minimis* and that any failure to pay its employees was in good faith.  If the jury were to agree with Creditsafe, Plaintiff would likely recover little or nothing.

Moreover, Plaintiff would have to obtain class or collective action certification to present class-wide claims to a jury.  Although Creditsafe concedes the potential class members are similarly situated for settlement purposes, Creditsafe would have vigorously argued that various differences in job duties and responsibilities preclude class and collective action certification had litigation continued.  Absent settlement, this issue remained uncertain.

In the face of these material disputes, it is significant that this Settlement brings class members meaningful monetary value now, not years from now, and provides certainty regarding the outcome.  *In re King Resources Co. Securities Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) ("the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future.").  "In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."  *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citing cases).

### 3. This Was a Complex and Potentially Lengthy Case

This case involved complex issues of fact and law which remain unanswered and would have to be resolved at or before trial.  Plaintiff would need to compile and adduce documentary evidence, representative testimony, and possibly expert testimony sufficient to establish liability and damages for the entire class.  Regardless of the outcome at trial, post-judgment appeals would be likely.  Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed Settlement.

### 4. The Parties and Their Counsel Support the Settlement

After thorough investigation of the facts and law, the Parties have gained a comprehensive knowledge of their respective claims and defenses. Additionally, the Parties have ample evidence to make an informed assessment of the proposed Settlement. "[T]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties. Courts have consistently refused to substitute their business judgment for that of counsel." *Id.* Based on their knowledge of the case and the applicable law, as well as their experience in similar FLSA actions, the Parties' counsel believe the Settlement is fair, reasonable, and adequate. The Parties respectfully suggest this Court should conclude the proposed Settlement reflects a fair resolution of a *bona fide* dispute under the FLSA and approve the Settlement.

## V. The Named Plaintiff Should Receive a Service Award

The time and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award "above and beyond what the typical class member is receiving." *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (awarding $5,000 service award to each of four class representatives); *see also Simmons*, 2012 WL 2885919 at *2 (approving $6,000 incentive awards to each named plaintiff); *Cimarron Pipeline Constr., Inc. v. National Council on Compensation Ins.*, 1993 WL 355466 at *2 (W.D. Okla. June 8, 1993) (awarding $10,000 service award to each of three class representatives); *Camp v. Progressive Corp.*, 2004 WL 2149079 at *7 (E.D. La. Sept. 23, 2004) (approving up to $10,000 in service awards to class representative and other plaintiffs). Service awards "are particularly appropriate in the employment context [because] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the

benefit of the class as a whole, undertaken the risk of adverse actions by the employer." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (awarding $10,523 out of class fund of $75,000).

Plaintiff Nicholas DeJesus and Opt-In Plaintiff Danielle Fredericks substantially assisted counsel in achieving this Settlement on behalf of the class, and should receive service awards. Plaintiff DeJesus was responsible for initiating this action and both Mr. DeJesus and Ms. Fredericks provided invaluable guidance and assistance on numerous occasions to Plaintiffs' counsel. Plaintiff also assisted counsel in evaluating Defendant's proffered defenses. There is no question that the other employees have substantially benefited from Mr. DeJesus and Ms. Fredericks' actions. Without Mr. DeJesus and Ms. Fredericks' efforts, this case would not have been brought and this Settlement would not have been achieved. In light of these efforts, payment of a $3,500.00 service award to Mr. DeJesus and a $1,000.00 service aware to Ms. Fredericks is amply justified.

**VI.     Plaintiffs' Counsel Should be Awarded Their Fees and Expenses.**

Under the FLSA, plaintiffs are entitled to reasonable attorneys' fees spent in recovering unpaid wages. 29 U.S.C. § 216(b). An award of attorney fees to class counsel is also appropriate under Rule 23(h). The typical method for awarding attorneys' fees in common fund cases, such as this case, is to award a percentage of the settlement funds. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); see *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (l0th Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 482 (l0th Cir. 1994). The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Brown v. Phillips Petroleum Company*, 838 F.2d 10 451,455 (l0th Cir. 1988) (quoting *Boeing Co. v. Van*

*Gemert*, 444 U.S. 472, 478 (l980)). Thus, the percentage award results "in a sharing of the fees among those benefited by the litigation." *Brown*, 838 F.2d at 454.

In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Following that advice, and desiring to avoid a second litigation over fees, the Parties have agreed to settle their dispute over the award of attorneys' fees, costs, and expenses.

The agreed fee amount, 33 1/3% of the total FLSA Settlement Fund, is eminently reasonable. See *Wiles v. Southwestern Bell Tel. Co.*, 2011 WL 2416291, at *4-5 (W.D. Mo. June 9, 2011) (awarding 33 1/3% of the common fund in attorneys' fees); *Johnson v. Brennan*, 2011 WL 4357376 at *13 (S.D.N.Y. September 16, 2011) (awarding 33 1/3 % of recovery, stating "In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award."); *In re Milos Litigation,* 2011 WL 6015705 (S.D.N.Y. 2011) (33 1/3%); *Williams v. Aramark Sports, LLC,* 2011 WL 4018205 at *10 (E.D. Pa. Sept. 9, 2011) (33 1/3%, stating that percentage of recovery is favored method in "common fund" cases."); and *Boone v. City of Philadelphia*, 668 F. Supp. 693, 714 (E.D. Pa. 2009) (citing a study of 289 class action settlements in the Third Circuit indicating that the average percentage awarded was 31 1/7% and the median was 33 1/3%).

Plaintiffs' counsel should not be penalized for achieving this expeditious benefit for the class. A fee reduction based on an expeditious settlement would only incentivize unnecessary litigation and use of the Court's resources. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*,

2011 WL 5547159 at *1-3 (N.D. Ia. Nov. 9, 2011) (*sua sponte* increasing attorney fee from 33.33 % to 36.04 % in recognition of efficient early settlement).

Plaintiffs' counsel fee has been agreed by the Parties and will be paid without diminishing the fairness of the recovery to the class. Pursuant to the prescription of the Supreme Court in *Hensley*, 461 U.S. at 437, the Court should not disturb Parties' settlement of the amount of Plaintiffs' counsel fees.

**Conclusion**

This Settlement was reached as a result of contested litigation and resolves a *bona fide* dispute between the Parties. The Parties engaged in thorough investigation of the facts and law and reached a Settlement that eliminates the Parties' respective risks and minimizes their expenses and the burden on the Court. The Settlement is fair, reasonable, and adequate, and provides class members a FLSA Settlement Fund which approximates the value of the putative Class Members' total claims for unpaid overtime hours worked, plus liquidated damages, during the applicable time period, free and clear of attorneys' fees or expenses. For the reasons stated herein, Plaintiff respectfully requests that the Court approve the Settlement.

                      **McCARTHY WEISBERG CUMMINGS, P. C.**

Date: February 16, 2015       /s/ Larry A. Weisberg_____
                                       Larry A. Weisberg
                                       Derrek W. Cummings
                                       2041 Herr Street
                                       Harrisburg, PA 17103-1624
                                       Phone: (717) 238-5707
                                       Fax: (717) 233-8133

                                       *Plaintiffs' Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date applied by the Court's ECF filing system, I electronically filed the foregoing with the Clerk of Court using CM/ECF.

By: /s/ Larry A.Weisberg
Larry A. Weisberg